**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**UNITED STATES OF AMERICA,**
**ROBERT GREEN and EMILY MOORE,**
**ex relator**

**Plaintiffs,**

**v.** **Case No: 5:15-cv-60-Oc-CEMPRL**

**THI TRAN,**

**Defendant.**

---

**ORDER**

This False Claims Act ("FCA") case comes before the Court post-settlement for consideration of Defendant's motion to compel (Doc. 29), to which Plaintiffs have responded (Doc. 30). Defendant moves to compel an unredacted copy of Plaintiffs' retainer fee agreement and argues that the document is relevant to the resolution of Plaintiffs' currently pending motion for attorney's fees. For the reasons explained below, Defendant's motion is due to be denied.

**I. Background**

As *qui tam* Plaintiffs, Robert Green and Emily Moore brought this action on behalf of the United States and on their own behalf under 31 U.S.C. § 3130 and against Thi Tran, a dermatologist. The *qui tam* Plaintiffs, or Relators, brought claims arising out of alleged schemes to defraud the United States through claims to government health care programs such as Medicare. (Doc. 1). Plaintiffs contended that Defendant Tran was responsible for an astounding number of inflated Medicare claims between 2011 and 2016, and was number one in the nation for the amount collected from Medicare for nine different procedures and in the top 10 for 22 distinct CPT (current procedural terminology) codes. In 2012 alone, Medicare paid Dr. Tran $7,777,110 for more than

84,305 procedures that he claimed he performed. (Doc. 23, p. 2). Ultimately, the parties reached a settlement agreement and the Court dismissed the case with prejudice while retaining jurisdiction to rule on motions for attorney's fees and costs. (Doc. 20).

Relators Green and Moore filed a motion seeking an award of attorney's fees, costs, and expenses. Relators seek reasonable fees of $182,700 and $1,438 in costs, and argue that such an award is reasonable in light of the complexity and severity of the case, as well as the experience and skill level of their counsel. (Doc. 23). Defendant, in turn, has not yet responded because he contends that resolution of a discovery dispute is required before he files his response. Consequently, the Court granted Defendant an extension to file his response until seven days from the date the Court rules on the motion to compel. (Doc. 28).

Defendant filed a motion to compel Plaintiff's response to his discovery request seeking "[a]ll your engagement letters and documents containing the terms of your agreement for fees or legal services relating to this case." (Doc. 29, p. 1). While Plaintiffs objected to this request, following the parties' good faith conferences, Plaintiffs did provide Defendant a redacted executed fee agreement (Doc. 30-1). Meanwhile, Defendant has withdrawn its request for other documents such as counsel's contemporaneously recorded time records. (Doc. 29). And, Plaintiffs have withdrawn their request for sanctions related to these issues and their request for an early resolution to the reasonable rate issue. (Doc. 31).

Accordingly, the issue that remains for resolution is Defendant's motion to compel an unredacted version of Plaintiffs' fee agreement.

## II. Legal Standards

Generally, parties are entitled to discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering various factors. Fed. R. Civ. P. 26(b)(1). Under Rule 26, however, the Court has broad discretion

to limit the time, place, and manner of discovery as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The Court's exercise of discretion to appropriately fashion the scope and effect of discovery will be sustained unless it abuses that discretion to the prejudice of a party. *Amey, Inc. v. Gulf Abstract & Title, Inc*., 758 F.2d 1486, 1505 (11th Cir.1985); *see also Moore v. Armour Pharm. Co*., 927 F.2d 1194, 1197 (11th Cir.1991) ("The trial court...has wide discretion in setting the limits of discovery, and its decisions will not be reversed unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision.").

Relevancy and proportionality are the guiding principles: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). In order to determine the scope of discovery the Courts and the parties must consider and evaluate "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Comment, 2015 Amendment).

In order to frame and resolve a discovery dispute, it is essential to determine what the purpose of the discovery is. Indeed, as the commentary to Rule 26 informs us, "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." *Id*. Then, of course, it is the "Court's responsibility, using all the information provided by the parties, . . . to consider

these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id*.

**III. Discussion**

As set forth in their settlement agreement, the parties agree that the False Claims Act requires Defendant to compensate Relators for all reasonable attorneys' fees, costs, and expenses. 31 U.S.C. §3730(d)(1). Thus, the question is whether Defendant is entitled to an unredacted version of Plaintiffs' fee agreement with their counsel, and whether the unredacted portions of the agreement are relevant to the claim for attorneys' fees.

To begin, it is worth noting that many of Defendant's arguments in support of his motion to compel have been rendered moot by Plaintiffs' production of a redacted version of the fee agreement. (Doc. 30-1). The redacted agreement reflects an attorney rate of $700 per hour, and Plaintiffs have conceded that $700 per hour is a reasonable rate in this case. The remaining point of contention, however, is that the document is redacted as to the percent of the *qui tam* share that will be paid to Plaintiffs' attorneys, as well as redacted portions entitled "Co-Relators Agreement as to Sharing any Recovery," and other provisions. (Doc. 30-1).

Defendant contends that Plaintiffs should be required to produce the fee agreement so that he can review it and then advance whatever good faith arguments he deems appropriate in the case. (Doc. 29, p. 5). Defendant also contends that the total fees received by Relators' counsel is relevant to the Court's lodestar determination of reasonable hours and reasonable rate, but does not specify exactly how that information is relevant.

In response, Plaintiffs argue that the redacted portions of the fee agreement are not relevant to any issue in dispute. Plaintiffs rely on this Court's detailed explanation and analysis of the recovery and compensation scheme in the FCA, citing *U.S. ex rel. Alderson v. Quorum Health Grp., Inc.*, 171 F. Supp. 2d 1323, 1335 n. 35 (M.D. Fla. 2001). In *U.S. ex rel. Alderson,* Judge

Merryday observed that the FCA's intent is to provide abundant compensation "if a party recovers abundantly," and that "the law generally accepts contingent fees (and hybrid contingent and hourly fees) as a tool that provides litigants access to the courts, unavailable by other means of compensation." *Id*. Indeed, the Court noted that contingent fees "offer an opportunity to proportion risk and reward." *Id*. Importantly, the Court stated:

> Of course, in FCA cases Congress has statutorily resolved to compensate a relator by resort to a percentage of the recovery and without reference to hourly compensation, actual costs, or prevailing market rates. A relator is at liberty to compensate his counsel in accord with the legislative framework of percentages. In other words, to obtain the necessary professional advice and assistance, Alderson remains free to distribute his recovery as he sees fit (subject to the lawyer's ethical obligations to charge a reasonable fee) and the matter is of no moment to the United States. In fact, the congressional scheme compensating relators by a range of percentages of the gross recovery inherently promotes compensation that exceeds normal market rates of compensation as measured by dollars per unit of time (usually per hour). Congress has judged that the public interest in detecting and defeating fraud in the payment of public money deserves and manifestly requires an abundant reward. Stated differently, in allowing for a percentage recovery and the consequent abundant reward to relators, Congress undoubtedly considered that accusations of large scale, systematic, public fraud often engender a highly motivated and especially aggressive defense, which exacts a heavy toll on accusers and their supporters. The FCA expresses Congress' understandable willingness to forbear between 15 and 25 cents per dollar of the recovery in order to reclaim a defendant's ill-gotten gain.

*Id.* Following this reasoning, Plaintiffs contend that the redacted portions of the fee agreement are not relevant to the Court's lodestar analysis.

To be sure, none of the cases cited by Defendant involve attorney's fee motions in FCA actions, nor do they contemplate the unique compensation scheme of the FCA, as described by this Court in *U.S. ex rel. Alderson*. Indeed, Defendant fails to cite any authority supporting the proposition that a redacted copy of the fee agreement would be relevant to the attorneys' fee analysis in this case. Certainly, cases cited by Defendant support the proposition that the agreed

upon rate can be generally relevant (though not determinative) in a variety of types of cases in determining the fee rate in the lodestar approach. *See, e.g., Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc*., 253 F.3d 1332, 1337 (11th Cir. 2001) (discussing the lodestar approach to an attorneys' fee award in a Lanham Act case*). See also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1367 (11th Cir. 2008) (affirming the dismissal of an attorney's fees claim in an attorney negligence case).

Defendant also cites Southern District of Florida Local Rule 7.3(a)(4) which requires a motion for attorneys' fees to disclose the terms of any applicable fee agreement. Although that rule is not binding on this Court, Plaintiffs have complied with the spirit of this rule by disclosing the redacted copy of the agreement specifying a rate of $700 per hour. Defendant provides no support for his contention that the redacted portions of the agreement (for example the percent of the *qui tam* share that will be paid to Plaintiffs' attorneys and the portion entitled "Co-Relators Agreement as to Sharing any Recovery") are relevant to the lodestar analysis pending before the Court.

To the contrary, Judge Merryday's thoughtful analysis in *U.S. ex rel. Alderson*, 171 F. Supp. 2d at 1335, suggests the redacted portions of the agreement are not relevant. Further, *in U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp*., 793 F. Supp. 2d 1260, 1264 (D. Colo. 2011), the court expressly rejected the notion that the lodestar awarded should be reduced in light of a contingency fee arrangement in FCA cases. The court unequivocally stated, "[t]he existence of a contingent fee agreement between Maxwell and his counsel does not justify reducing the lodestar amount of attorneys' fees owed by the Defendant under 31 U.S.C. § 3730(d)(2)." *Id*.

Indeed, other courts have acknowledged the existence of fee arrangements in *qui tam* litigation which allow lawyers to receive both a statutory fee and a contingency fee without offset.

*See e.g. United States ex rel. Lefan v. General Electric Co.*, 394 Fed.Appx. 265, 272 (6th Cir.2010) (stating that an attorney's contingency fee award was "in addition to" statutory attorney fees and cost reimbursements); *United States v. Cooper Health Sys.*, 940 F. Supp. 2d 208, 216 (D.N.J. 2013) (finding "that the fee shifting provisions of the Federal False Claims Act do not prohibit an attorney from receiving both statutory attorneys' fees and a contingency fee."); *United States ex rel. Poulton v. Anesthesia Associates of Burlington, Inc.*, 87 F.Supp.2d 351, 359 (D.Vt. 2000) (granting an upward adjustment of lodestar under § 3730(d)(1) even though attorneys had "already recovered handsomely through their contingency fee arrangement"); and *United States ex rel. John Doe I v. Pennsylvania Blue Shield*, 54 F.Supp.2d 410, 413 (E.D.Pa.1999) (awarding statutory fees under § 3730(d)(1) even though relators had already paid a contingency).

And, courts considering attorneys' fees claims under other fee shifting statutes have come to the same conclusion. *See Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (In the context of a §1988 case, observing that "[w]hat a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order. Section 1988 itself does not interfere with the enforceability of a contingent-fee contract.").[1]

Under Rule 26, the Court must consider whether the requested discovery is "relevant to any party's claim or defense and proportional to the needs of the case." In the context presented

---

[1] *See also Quesada v. Thomason*, 850 F.2d 537, 543 (9th Cir.1988) (stating that a defendant obligated to pay fees under 42 U.S.C. § 1988 "should not benefit from the private [contingency fee] agreement by being permitted to pay anything less than ... an otherwise reasonable lodestar fee"); *Certain v. Potter*, 330 F.Supp.2d 576, 589 (M.D.N.C.2004) ("Defendant's argument that [Plaintiff's attorney] might ultimately receive both the fee award and a contingency fee is not relevant to the question before this Court, that is, the determination of the reasonable fee award that *Defendant* must pay to *Plaintiff* ...."). (emphasis in original).

here, including the particular circumstances of this case in which Plaintiffs have already disclosed the rate of $700 per hour, the undersigned finds that the unredacted version of the fee agreement has little or no additional relevance to the Court's pending lodestar analysis. Notably, Defendant has identified no specific basis for its relevance. Rather, Defendant merely asserts that it "is relevant and should be produced, so that Defendant can bring the proper arguments before the Court for consideration." Based on a review of the redacted agreement and the parties' briefs, the only arguments the Court can anticipate would be to argue for a reduction in the lodestar award based upon compensation received via the contingency agreement provisions of the agreement. As already observed, such arguments are unavailing and contrary to the policy of the FCA. Thus, compelling production of an unredacted version of the fee agreement here would simply invite unnecessary arguments that would be a waste of time and resources for all involved. In making this determination, the undersigned has also considered how proportional the need of the requested discovery is to the needs of the case here, where the requested attorney's fees amount to $182,700 in a case involving many millions of dollars in alleged false claims.

In light of the foregoing determination, the Court need not address Plaintiffs' assertion of privilege or work product, or the argument that such discovery is inappropriate or untimely at this phase of the case.

## IV. Conclusion

For the reasons explained above, Defendant's motion to compel (Doc. 29) is denied. Within seven days of the entry date of this Order, Defendant shall file a response to Plaintiffs' motion for attorneys' fees.

**DONE** and **ORDERED** in Ocala, Florida on July 2, 2020.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties